## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DARREL THORN**                                          **CIVIL ACTION**

**VERSUS**                                                **NO:  15-127**

**MELVIN McGARY, ET AL.**                                 **SECTION: "S" (1)**

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike the Affidavit of Monica

LeBlanc (Doc. #70) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. #67)

is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

### BACKGROUND

This matter is before the court on a motion for summary judgment filed by defendants,

Melvin McGary, David Bryant, Ponchatoula Mayor Robert F. Zabbia and Bry Layrisson, the

Ponchatoula Chief of Police.[1]

---

[1]  Plaintiff also named the Ponchatoula Police Department and the Ponchatoula Mayor's Court as defendants.  Under Rule 17(b)(3) of the Federal Rules of Civil Procedure, the capacity to be sued, for parties other than individuals and corporations, is determined by the law of the state where the court is located. Under Louisiana law, to have the capacity to be sued, an entity must qualify as a "juridical person", which the Louisiana Civil Code defines as "an entity to which the law attributes personality, such as a corporation or partnership." La. Civ. Code art. 24.  Louisiana law does not grant such legal status to police departments. Valentine v. Bonneville Ins. Co., 691 So.2d 665, 668 (La. 1997).  Further, Louisiana state courts are parts of the greater body of the Judicial Branch of the Louisiana state government, and do not have the capacity to be sued.  Green v. Dist. Attorney Office, 2009 WL 651132, at *5 (E.D. La. 3/10/2009) (Feldman, J.); see also Griffith v. Louisiana, 808 F.Supp.2d 926 (E.D. La. 2011) (Berrigan, J.); Rutherford v. Louisiana, 2011 WL 692031 (E.D. La. 2/17/2011) (Africk, J.); Hall v. Louisiana, 974 F.Supp.2d 957 (M.D. La. 2013) (Jackson, J.).  Thus, plaintiff cannot state a claim against the Ponchatoula Police Department or the Ponchatoula Mayor's Court, and any claims purportedly made against the Ponchatoula Police Department and the Ponchatoula Mayor's Court are DISMISSED WITH PREJUDICE.

Plaintiff, Darrel Thorn, who is proceeding *pro se*,[2] filed this complaint against the defendants alleging constitutional and various state-law claims arising from his January 25, 2014, arrest. According to Thorn's complaint, on January 25, 2014, he and his passenger, Monica LeBlanc, were driving on 11th Street in Ponchatoula, Louisiana when McGary, who was driving in his police vehicle, passed Thorn's car. McGary turned around and pulled over Thorn's vehicle. McGary ordered Thorn and his passenger to exit the vehicle. Bryant arrived and searched the car and LeBlanc. McGary performed a pat-down search on Thorn and found four Xanax pills in a bottle with Thorn's name on it. McGary arrested Thorn for possession of a controlled substance. The officers told LeBlanc to drive Thorn's vehicle home. Thorn was in jail for a little over a day before being released on his own recognizance. The District Attorney for the Twenty-First Judicial District, State of Louisiana, refused to prosecute the possession of a controlled substance charge against Thorn. Thorn alleges that the officers' actions constituted violations of the Fourth and Fourteenth Amendments to the Constitution of the United States, cruel and unusual punishment, false arrest, infliction of emotional distress, defamation of character and slander.

Defendants filed a motion for summary judgment. McGary and Bryant argue that they are entitled to qualified immunity as to Thorn's constitutional claims. Mayor Zabbia and Chief Layrisson argue that Thorn did not state any claims against them personally or any claims against

---

[2]  Because Thorn is proceeding *pro se*, the court must construe his pleadings liberally. <u>Grant v. Cuellar</u>, 59 F.3d 523, 524 (5th Cir. 1995). However, "[t]he right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981). The "notice afforded by the Rules of Civil Procedure and the local rules" is "sufficient" to advise a *pro se* litigant of his burden in opposing a motion for summary judgment. <u>Martin v. Harrison Cnty. Jail</u>, 975 F.2d 192, 193 (5th Cir. 1992).

the City of Ponchatoula or the Ponchatoula Police Department under <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 98 S.Ct. 2018 (1978).  Further, defendants argue that Thorn does not allege any facts to support his claims for cruel and unusual punishment, false arrest, infliction of emotional distress, defamation of character and slander.

In support of their motion for summary judgment, defendants filed a statement of uncontested facts in accordance with Local Rule 56.1 and the affidavits of McGary and Bryant.[3] The statement of uncontested facts and the affidavits set forth a different version of what transpired from what is alleged in Thorn's complaint.  According to defendants, on January 26, 2014, McGary, who in uniform and in a marked police vehicle, was on patrol on North 11th Street in Ponchatoula when he observed Thorn's vehicle parked in the roadway.  McGary thought that the vehicle might be stranded and that it posed a danger to its occupants and other motorists by causing a high risk of collision on the narrow two-lane road on which vehicles are known to travel at high speeds around dangerous curves.  Therefore, McGary notified dispatch that he was going to investigate to see why the vehicle was stopped.

McGary turned on his police vehicle's overhead light bar and pulled up behind Thorn's vehicle.  McGary became suspicious because he observed Thorn and LeBlanc bending over as if they might be trying to hide something.  As McGary approached, Thorn exited the vehicle and stood by the driver's side door.  McGary asked Thorn why his car was parked in the roadway and whether there was an emergency.  McGary also asked Thorn to produce a valid driver's license, which Thorn did, but Thorn did not answer McGary's questions.  McGary asked Thorn whether he had any

---

[3] Local Rule 56.1 provides that "[e]very motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue."

3

weapons or narcotics in his possession.  Thorn said that he did not.  Bryant, who heard McGary's call to dispatch, arrived on the scene to assist McGary.

While McGary was talking to him, Thorn bent over and fumbled with his pants.  McGary asked Thorn to stand straight up and asked why Thorn was fumbling with his pants.  When Thorn straightened up, a prescription pill bottle fell out of Thorn's pants onto the ground.  McGary picked up the bottle and observed that it contained five pills that he believed to be Xanax, but was not labeled.  Because Thorn could not produce a prescription for the pills, McGary arrested him for illegal possession of a Schedule IV controlled dangerous substance without a valid prescription in violation of Louisiana Revised Statutes § 40:969, *et seq.*  McGary also issued a ticket to Thorn for parking in the roadway.  Thorn agreed to allow LeBlanc to drive his vehicle from the scene.

McGary brought Thorn to the Ponchatoula Police Station and booked him.  Thereafter, Bryant transported Thorn to the Tangipahoa Parish Sheriff's Office in Amite City, Louisiana where he was incarcerated until the next day.  The unlabeled pill bottle and pills were transported to the Louisiana State Police Crime Lab, which confirmed that the pills were alprazolam (Xanax), a Schedule IV controlled dangerous substance under Louisiana law.

The illegal possession of prescription drugs charge against Thorn was eventually dismissed. The ticket issued to Thorn for parking in the street was disposed of as part of a bundle deal in the Ponchatoula Mayor's Court wherein Thorn pleaded guilty to other tickets and charges of failure to appear in court for the ticket for parking in the street, and the parking in the street ticket was dismissed.  Thorn's arrest was reported in the newspaper along with other arrests, and Thorn asked the newspaper to run a story about the drug charge being dismissed.

Thorn filed a opposition to the motion for summary judgment in which he argues that McGary violated his rights guaranteed by the Fourth and Fourteenth Amendments by stopping his vehicle for no reason. Thorn supports the opposition with LeBlanc's affidavit in which she states facts consistent with those alleged in Thorn's complaint. Thorn did not attach to his opposition a separate statement of disputed material facts. Local Rule 56.2 requires that "[a]ny opposition to a motion for summary judgment must include a separate and concise statement of the material facts which the opponent contends present a genuine issue. All material facts in the moving party's statement will be deemed admitted, for the purpose of the motion, unless controverted in the opponent's statement." Because Thorn failed to file such a statement, the facts included in defendants' statement of uncontested facts are deemed admitted for the purposes of this motion.

Defendants also filed a motion to strike LeBlanc's affidavit arguing that is unfair for Thorn to rely on that document when Thorn has refused to produce LeBlanc for a deposition. Thorn opposed the motion arguing that it would be unfair to strike the affidavit because he gave defendants' attorney LeBlanc's contact information, and the attorney could have subpoenaed her. Thorn also argues that LeBlanc's affidavit should be accepted in stead of testimony from her because she has health issues.

## ANALYSIS

### I.    Defendants' Motion to Strike LeBlanc's Affidavit

Defendants moved to strike LeBlanc's affidavit arguing that is unfair for Thorn to rely on that document when Thorn has refused to produce LeBlanc for a deposition. At the April 14, 2016, pretrial conference, the court ordered Thorn to produce LeBlanc for a deposition. Defendants state

in their motion that they have repeatedly tried to schedule LeBlanc's deposition through Thorn, and by attempting to contact LeBlanc directly, to no avail.

Thorn argues that LeBlanc's affidavit should not be stricken because she was an eyewitness to the events comprising the basis of his lawsuit.  He argues that dependants' attorney could have subpoenaed LeBlanc to obtain her deposition and that she should not be required to give testimony because of her medical condition.  Instead, he argues that her affidavit should be deemed sufficient.

Thorn relies on LeBlanc's statements to support his contentions in the lawsuit.  Defendants have a right to depose LeBlanc.  It is unfair for Thorn to rely on LeBlanc's affidavit to oppose the motion for summary judgment when defendants have unsuccessfully attempted to schedule her deposition.  Thorn has not adequately explained why he did not do all that he could to assist defendants in scheduling LeBlanc's deposition.  Therefore, the motion to strike is GRANTED, and LeBlanc's affidavit will not be considered with respect to Thorn's opposition to the motion for summary judgment.

## II.    Defendants' Motion for Summary Judgment

### A.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Granting a motion for summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits filed in support of the motion demonstrate that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2509-10 (1986).  The court must find "[a] factual dispute . . . [to be]

6

'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." <u>Beck v. Somerset Techs., Inc.</u>, 882 F.2d 993, 996 (5th Cir. 1989) (citing <u>Anderson</u>, 106 S.Ct. at 2510).  In ruling on a motion for summary judgment, the court must adhere to the axiom that "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Tolan v. Cotton</u>, 134 S.Ct. 1861, 1863 (2014) (quoting <u>Anderson</u>, 106 S.Ct. at 2513).

**B.  Thorn's § 1983 Individual Capacity Claims Against McGary and Bryant**

Thorn alleges that McGary and Bryant are liable under § 1983 for violating his rights secured by the Fourth Amendment to the Constitution of the United States.[4]  Thorn's complaint can be construed to allege three separate Fourth Amendment claims: (1) that McGary unlawfully stopped Thorn's vehicle; (2) that McGary and Bryant unlawfully searched Thorn and his vehicle; and (3) that McGary unlawfully arrested Thorn.

**1. Section 1983**

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States. 42 U.S.C. § 1983; <u>Monell v. Dep't of Soc. Servs.</u>, 98 S.Ct. 2018 (1978).   Section 1983 is not itself a source

---

[4]  Thorn states in the complaint that he seeks damages for cruel and unusual punishment. The Eighth Amendment to the Constitution of the United States provides that post-conviction prisoners have a right to be free from cruel and unusual punishment. In <u>Bell v. Wolfish</u>, 99 S.Ct. 1861, 1871 (1979), the Supreme Court of the United States determined that, as to a pretrial detainee, the proper inquiry is under the Due Process Clause of the Fourteenth Amendment as to whether the conditions accompanying the detention are imposed for the purpose of punishment because that clause does not permit punishment prior to an adjudication of guilty.  Thorn does not allege any facts to support a claim under the Due Process Clause of the Fourteenth Amendment regarding his conditions of confinement as a pretrial detainee.  Therefore, his "cruel and unusual punishment" claim is DISMISSED WITH PREJUDICE.

of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 n. 3 (5th Cir. 1999).

To pursue a claim under section 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States, and; (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. Sw. Bell Tel., LP v. City of Hous., 529 F.3d 257, 260 (5th Cir. 2008); see also West v. Atkins, 108 S.Ct. 2250, 2255-54 (1988).

Thorn alleges that McGary and Bryant violated his rights guaranteed by the Fourth Amendment. The Fourth Amendment, made applicable to the States via the Fourteenth Amendment, "ensures that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 195 (5th Cir. 2009).   Thorn also alleges that McGary and Bryant were acting under the color of law and pursuant to their authority as Ponchatoula police officers during the events that give rise to this litigation. Therefore, Thorn has alleged claims against McGary and Bryant under § 1983. However, McGary and Bryant argue that their conduct did not violate Thorn's Fourth Amendment rights because they are entitled to qualified immunity.

### 2. Qualified Immunity

Qualified immunity is an affirmative defense that protects public officials who are sued in their individual capacities for violations of constitutional rights.  Government officials are entitled to qualified immunity to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982). "A qualified immunity defense serves to shield a government official from

8

civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." Atteberry v. Nocona Gen'l Hosp., 430 F.3d 245, 253 (5th Cir. 2005) (citation omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S.Ct. 1092, 1096 (1986). "The immunity inquiry is intended to reflect the understanding that 'reasonable mistakes can be made as to the legal constraints on particular police conduct.'" Pasco v. Knoblauch, 566 F.3d 572, 582 (5th Cir. 2009) (citation omitted).

"To establish an entitlement to qualified immunity, a government official must first show that the conduct occurred while he was acting in his official capacity and within the scope of his discretionary authority." Beltran v. City of El Paso, 367 F.3d 299, 303 (5th Cir. 2004) (citing Cronen v. Tex. Dep't of Human Servs., 977 F.2d 934, 939 (5th Cir. 1992)). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. Kitchen v. Dall. Cty., Tex., 759 F.3d 468, 476 (5th Cir. 2014).

A two-pronged inquiry is used to resolve qualified immunity questions raised on summary judgment. Tolan, 134 S.Ct. at 1865.  The first question is "whether the facts, '[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right[.]'" Id. (quoting Saucier v. Katz, 121 S.Ct. 2151, 2156 (2001)).  The question "asks whether the right in question was 'clearly established' at the time of the violation." Id. at 1866 (citing Hope v. Pelzer, 122 S.Ct. 2508, 2515 (2002)).  "Governmental actors are 'shielded from liability for civil damages if their actions did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Id. (quoting Hope, 122 S.Ct. at 2515).  "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable

9

official would understand that what he is doing violates that right." <u>Hope</u>, 122 S.Ct. at 2515. (quotations omitted).

Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." <u>Pearson v. Callahan</u>, 129 S.Ct. 808, 818 (2009).  However, "under either prong, courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." <u>Tolan</u>, 134 S.Ct. at 1866.  When there is a genuine dispute as to the material and operative facts regarding qualified immunity, "[s]ummary judgment is inappropriate unless plaintiff's version of the violations does not implicate clearly established law." <u>Goodson v. City of Corpus Christi</u>, 202 F.3d 730, 739 (5th Cir. 2000) (quoting <u>Johnston v. City of Hous., Tex.</u>, 14 F.3d 1056, 1061 (5th Cir. 1994)).  In this case, the defendants' version of the facts are deemed undisputed due to Thorn's failure to comply with Local Rule 56.2.

### a.  Objective Reasonableness

### i.  McGary's Stop of Thorn's Vehicle

Thorn's first claim, that McGary unlawfully stopped Thorn's vehicle for no reason, is refuted by the uncontested facts submitted by defendants in support of the motion for summary judgment which states that Thorn's vehicle was parked on the side of the road when McGary approached to inquire whether the vehicle's occupants had an emergency.

Not all encounters with the police implicate the Fourth Amendment. <u>See</u> <u>Florida v. Bostick</u>, 111 S.Ct. 2382, 2386 (1991).  "An officer seizes a person when he, 'by mans of physical force *or* show of authority, has in some way restrained the liberty of a citizen.'" <u>Id.</u> (quoting <u>Terry v. Ohio</u>, 88 S.Ct. 1868, 1879 n. 16 (1968)).  A seizure occurs "only if, in view of all of the circumstances

surrounding the incident, a reasonable person would have believed that he was not free to leave."
Michigan v. Chesternut, 108 S.Ct. 1975, 1979 (1988) (quotation omitted).  Here, the evidence
viewed in the light most favorable to Thorn establishes that Thorn would not have been free to leave
until after McGary completed his questioning.  Thus, McGary's initial approach of Thorn's vehicle
resulted in a seizure that implicates the Fourth Amendment.

The constitutional validity of a seizure that stops short of an arrest is determined under the
reasonableness standard set forth in Terry v. Ohio, 88 S.Ct. 1868 (1968).  Under Terry, the court
must balance the governmental interest that allegedly justifies the seizure against the invasion which
the seizure entails. Terry, 88 S.Ct. at 1879.  A seizure is reasonable under the Fourth Amendment
if the detaining officer can identify "specific and articulable facts which, taken together with rational
inference from those facts, reasonably warrant" the seizure. Id. at 1880.  The reasonableness of a
particular seizure is evaluated in light of the particular circumstances by judging the facts against
an objective standard of whether "the facts available to the officer at the moment of the seizure . .
. warrant a man of reasonable caution in the belief that the action taken was appropriate[.]" Id.

The police may stop and temporarily seize a person based on probable cause, reasonable
suspicion, or as part of the police's community-caretaker functions. See Whren v. United States, 116
S.Ct. 1769, 1776-77 (1996); Terry, 88 S.Ct. at 1879-81; Cady v. Dombrowski, 93 S.Ct. 2523, 2531
(1973).  An officer can stop a vehicle when he has "'probable cause to believe that a driver is
violating any one of the multitude of applicable traffic and equipment regulations.'" Whren, 116
S.Ct. at 1776 (quoting Delaware v. Prouse, 99 S.Ct. 1391, 1400 (1979)). Prouse "noted approvingly
that the foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon
observed violations, which afford the 'quantum of individualized suspicion' necessary to ensure that

11

police discretion is sufficiently constrained." Id. (internal quotations and citations omitted). Further, the Supreme Court of the United States has recognized that "local police officers . . . frequently engage in what . . . may be described as community-caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation fo a criminal statute." Cady, 93 S.Ct. at 2528.  In the course of exercising the community-caretaking function, an "officer may have occasion to seize a person . . . in order to ensure the safety of the public and/or the individual. . ." United States v. King, 990 F.2d 1552, 1560 (10th Cir. 1993) (citing United States v. Rideau, 949 F.2d 718, 720 (5th Cir. 1991) (officers stopped defendant for his own safety and safety of others after observing him standing in middle of road at night, in dark clothes, and apparently intoxicated) *vacated on other grounds*, 969 F.2d 1572 (*en banc*) (agreeing with panel on this point)).

McGary states in his affidavit that he observed Thorn's vehicle parked in the roadway, which he thought was a danger to the occupants and other motorists.  He approached Thorn's vehicle and asked whether there was an emergency. Ponchatoula City Ordinance 94-41 states that it is unlawful to park a vehicle where it is prohibited as shown by signs or markings.  Indeed, McGary issued a ticket to Thorn for violating this ordinance.  McGary's approach of Thorn's vehicle in this circumstance was reasonable to investigate the violation of the city ordinance and under a police officer's community-caretaker function.  Therefore, McGary's motion for summary judgment is GRANTED as to the seizure that resulted from his initial approach of Thorn's vehicle, and that claim is DISMISSED WITH PREJUDICE.

### ii.  McGary and Bryant's Search of Thorn and His Vehicle

Thorn alleges that McGary searched him and Bryant searched his vehicle.  However, this is refuted by affidavits of McGary and Bryant and the uncontested facts submitted by defendants in

support of the motion for summary judgment.  McGary states in his affidavit that Thorn exited the vehicle as McGary approached, and that while he was questioning Thorn, "Thorn began to bend over toward [McGary] and was fumbling with his pants. [McGary] asked Thorn to stand straight up and asked why he was fumbling with his pants . . . Thorn then straightened up and at that time an unlabeled prescription pill bottle fell out of Thorn's pants and onto the ground."  Bryant declared in his affidavit that he saw Thorn "fidgeting with his belt" and "then saw a prescription pill bottle fallout of Thorn's pants onto the ground."  Bryant also declared that he "watched the female passenger [in Thorn's vehicle] while McGary spoke with Thorn."  These uncontested facts demonstrate that there was no search of Thorn or his vehicle.  Therefore, McGary and Bryant's motion for summary judgment is GRANTED as to the alleged search, and that claim is DISMISSED WITH PREJUDICE.

### iii. McGary's Arrest of Thorn

Thorn alleges that McGary's arresting him violated the Fourth Amendment because the alleged stop of his vehicle and search that led to the discovery of the unlabeled pill bottle were unjustified.  As stated above, McGary's initial approach of the vehicle was justified on the basis of Thorn's traffic violation for stopping in the roadway and a police officer's community-caretaker function, and there was no search.  Rather, McGary discovered the unlabeled prescription pill bottle when it fell out of Thorn's pants.

Under the "plain-view" doctrine, when an object is within an officer's plain view, "neither its observation nor its seizure would involve any invasion of privacy" under the Fourth Amendment. Horton v. California, 110 S.Ct. 2301, 2306 (1990).  "[T]he 'plain view' doctrine has been applied

where a police officer is not searching for evidence against the accused, but nonetheless inadvertently comes across an incriminating object." Id. at 2307 (citations omitted).

When the prescription pill bottle fell out of Thorn's pants, it was in McGary's plain view. Therefore, McGary was justified in picking it up and examining it.  McGary discovered that it contained Xanax, a Schedule IV dangerous substance, for which Thorn did not have a valid prescription.  Under La. Rev. Stat. § 40:969(C), it is unlawful to possess a Schedule IV controlled dangerous substance without a valid prescription.  The prescription pill bottle was unlabeled and there was no indication that Thorn had a valid prescription for the Xanax it contained.  Therefore, McGary had probable cause to arrest Thorn for violating the statute.  McGary's motion for summary judgment is GRANTED as to Thorn's arrest claim, and that claim is DISMISSED WITH PREJUDICE.

### C.  Thorn's Official Capacity Claims against McGary, Bryant, Chief Layrisson and Mayor Zabbia

A claim against a police officer or city official in his official capacity is treated as a claim against the municipality that person serves.  Brooks v. George CTY., Miss., 84 F.3d 157, 165 (5th Cir. 1996). In Monell, 98 S.Ct. at 2037, the Supreme Court of the United States held that local governments cannot be held liable under § 1983 for constitutional deprivations effected by their individual employees in their official capacities absent a showing that the pattern of behavior allegedly arose from "the execution of a government's policy or custom." To succeed on a Monell claim, the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  Valle v. City of Hous., 613 F.3d 536, 541-42 (5th Cir. 2010).

14

In this case, Thorn's official capacity claims must be dismissed because he cannot prevail on any of the alleged constitutional violation claims. Therefore, defendants' motion for summary judgment is GRANTED as to Thorn's official capacity claims against them, and those claims are DISMISSED WITH PREJUDICE.

### D. Thorn's § 1983 Individual Capacity Claims Against Chief Layrisson and Mayor Zabbia

Thorn names Chief Layrisson and Mayor Zabbia as a defendants in their individual capacities, but makes no allegations that Chief Layrisson and Mayor Zabbia were personally involved in the incident that is the subject of this suit. "Plaintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions: The plaintiff must allege specific facts giving rise to the constitutional claims." Oliver v. Scott, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted). Additionally, "[p]ersonal involvement is an essential element of a civil rights cause of action." Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983). Moreover, a police chief cannot be held vicariously liable for the actions of his officers pursuant to § 1983. Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir.1987); see also Oliver, 276 F.3d at 742 ("Section 1983 does not create supervisory or respondeat superior liability."). Because Thorn does not allege that Chief Layrisson and Mayor Zabbia were present at or personally involved in the incident that is the subject of this suit, Chief Layrisson and Mayor Zabbia are entitled to summary judgment on Thorn's § 1983 claims against them in their individual capacities. Thus, Chief Layrisson and Mayor Zabbia'a motion for summary judgment on Thorn's § 1983 claims against them in their individual capacities is GRANTED, and those claims are DISMISSED WITH PREJUDICE.

15

### E.  Thorn's State Law Claims

#### 1.  False Arrest

Defendants move for summary judgment on Thorn's claim for false arrest under Louisiana law.  With respect to Louisiana state-law claims for false arrest, the United States Court of Appeals for the Fifth Circuit has stated that "[b]ecause Fourth Amendment principles underpin Louisiana law relating to false arrests, the Fourth Amendment inquiry here is applicable to both [plaintiff's] federal and state law claims." O'Dwyer v. Nelson, 310 Fed. Appx. 741, 745 n. 4 (5th Cir. 2009).  Thus, the court's finding that McGary is entitled to summary judgment on Thorn's Fourth Amendment false arrest claim applies to his Louisiana state-law false arrest claim.  Further, without tortious conduct on McGary's part for which Chief Layrisson could answer under *respondeat superior*, Thorn cannot maintain his state-law false arrest claim against Chief Layrisson with respect to McGary's conduct. Therefore, the motion for summary judgment is granted as to Thorn's Louisiana state-law false arrest claim, and that claims is DISMISSED WITH PREJUDICE.

#### 2.  Infliction of Emotional Distress

Defendants moved to dismiss Thorn's infliction of emotional distress claims.  To recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the defendant's conduct was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and, (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be substantially certain to result from his conduct. White v. Monsanto Co., 585 So.2d 1205, 1209 (La. 1991).  To prevail on a claim of negligent infliction of emotional distress the plaintiff must prove that the defendant owed him a duty that afforded him protection from the risk

16

and harm caused, that the duty was breached, causing him to suffer genuine and serious mental anguish. Walker v. Allen Parish Health Unit, 711 So.2d 734, 737 (La. Ct. App. 1998).

Thorn has not put forth any evidence to satisfy the elements of either intentional or negligent infliction of emotional distress. At most, he states that he was embarrassed by the arrest. Therefore, defendants' motion for summary judgment is GRANTED as to Thorn's infliction of emotional distress claims, and those claims are DISMISSED WITH PREJUDICE.

### 3. Defamation of Character and Slander

Defendants moved to dismiss Thorn's defamation of character claim. Defamation is committed either by liable or slander. Libel is defamation which is "expressed by printing, writing, pictures, or signs," whereas slander is communicated by "oral expressions or transitory gestures." Cluse v. H & E Equip. Servs., Inc., 34 So.3d 959, 970 (La. Ct. App. 2010). To maintain an action for defamation, the plaintiff must prove that the defendants published defamatory words that were false with actual or implied malice that caused an injury. Gugliuzza v. K.C.M.C., Inc., 606 So.2d 790, 791 (La. 1992). Thorn does not allege any facts in his complaint sufficient to satisfy the elements of defamation. Defendants submit that Thorn's arrest was reported in the newspaper along with other arrests. However, this is not the publishing of false words because Thorn was in fact arrested. Therefore, defendants' motion for summary judgment is GRANTED as to Thorn's defamation claim, and that claim is DISMISSED WITH PREJUDICE.

### CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion to Strike the Affidavit of Monica LeBlanc (Doc. #70) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. #67) is **GRANTED**, and plaintiff's claims are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this  14th  day of June, 2016.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**

18